Filed 10/6/23  P. v. Zamora CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B327392 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA349543) |
| v. | |
| ESEQUIEL ZAMORA, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Mark S. Arnold, Judge.  Affirmed.

Jonathan E. Demson, under appointment by the Court of Appeal; Esequiel Zamora, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

————————————

# INTRODUCTION

A jury convicted Esequiel Zamora in 2010 on one count of willful, deliberate, and premeditated murder (Pen. Code, § 187, subd. (a),[1] two counts of attempted willful, deliberate, and premeditated murder (§ 187, subd. (a)), and conspiracy to commit murder (§ 182, sub. (a)(1)). The trial court sentenced Zamora to an aggregate prison term of 36 years four months to life. We affirmed Zamora's conviction. (*People v. Zamora* (Nov. 14, 2011, B224529) [nonpub. opn.].)

On December 7, 2022 the superior court denied Zamora's petition for resentencing under section 1172.6 (former section 1170.95) without issuing an order to show cause. The court ruled that Zamora was ineligible for relief as a matter of law because the jury, in finding Zamora committed the murder and attempted murders willfully, deliberately, and with premeditation, necessarily found he had the specific intent to kill and that the trial court had not instructed the jury on the natural and probable consequences doctrine or any other theory in which malice could have been imputed to him. ~(RT 192)~ Zamora appealed from the order denying his petition.

Zamora's appointed counsel, after reviewing the record, did not identify any arguable issues. We have independently reviewed the record and considered the arguments in Zamora's supplemental brief. We also find no arguable issue and affirm.

---

[1]     Statutory references are to the Penal Code.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Zamora's Convictions for Murder and Attempted Murder*

On November 23, 2008 Luis Mazariegos, a member of the Easy Riders criminal street gang, was living with his family on the third floor of an apartment building on South Main Street in Los Angeles. That afternoon Mazariegos was at home and getting ready for work when he saw a white car parked at the intersection of Main Street and 70th Street. Zamora, a member of the Wild Boys criminal street gang, got out of the white car and pointed at Mazariegos. Mazariegos was "in shock" and did not know why there was a problem because members of the Easy Riders got along with members of the Wild Boys. Zamora began writing graffiti on the wall. With spray paint Zamora crossed out certain gang graffiti and painted Wild Boys and other gang graffiti. Mazariegos understood this meant there was "a big conflict coming up." (*People v. Zamora, supra*, B224529.)

Late that night Mazariegos was lying on the couch in his apartment. His younger brother, Ivan, told Mazariegos to be careful and said, "It's your fault, man, they're out there in the white car. They won't leave, you know." Later, Mazariegos heard shots. Ivan, who was on the porch, said, "They got me. They got me." Mazariegos tried to go downstairs, but family and friends stopped him. Mazariegos saw four or five people running on Main Street toward 69th Street. Mazariegos identified Zamora in a six-pack photographic lineup. (*People v. Zamora, supra*, B224529.)

Gilbert Hinojosa, who was on the porch with Ivan and two other men, saw three or four people directly across the street. A bullet hit Ivan, and Hinojosa tried to revive him with

3

cardiopulmonary resuscitation. Ivan died from a single gunshot to the chest. Hinojosa described the four men he saw to the police, and one of the men on the porch identified Zamora from a six-pack photographic lineup. (*People v. Zamora, supra,* B224529.)

At the time of the shooting, Mazariegos's younger sister, Jackie, was walking to the apartment with some relatives. Jackie saw two men at separate corners of the intersection of Main Street and 70th Street and three men in the street. One of the five men pulled out a gun and fired at Jackie's apartment. The five men ran toward Jackie, and she ran toward them and screamed. The men turned and ran away. Jackie later identified Zamora as one of the five men who shot at the apartment. (*People v. Zamora, supra,* B224529.)

Efren Gutierrez, who had known Zamora for two years, testified he was visiting his aunt's house before the shooting. Gutierrez testified that Zamora talked about crossing out another gang's graffiti on the corner of Main Street and 70th street and that Zamora wanted to shoot someone. Later, when Gutierrez, Zamora, and co-defendant Edgar Canales went to get food, Gutierrez heard Zamora talking with Canales. Gutierrez stated that he heard Canales say, "Should I do it already?" or "Should I dump already" and that Zamora said, "We'll handle it, Perrito."[2] When they got near the corner of Main Street and 70th Street, Gutierrez, who was walking approximately 20 feet behind Zamora and Canales, heard a gunshot. Gutierrez ran and heard four or five more gunshots. (*People v. Zamora, supra,* B224529.)

---

[2] Gutierrez testified that in this context "perrito" meant "homie" or "little brother." (*People v. Zamora, supra,* B224529.)

4

The People charged Zamora with one count of murder, two counts of attempted murder, conspiracy to commit murder, and active participation in a criminal street gang conspiracy. After the trial court dismissed the criminal street gang conspiracy count, the jury convicted Zamora on the remaining four counts and found true allegations Zamora committed the murder and attempted murders willfully, deliberately, and with premeditation. ~(CT 159-162)~ The trial court sentenced Zamora to an aggregate term of 36 years four months to life.

In Zamora's direct appeal we rejected his contentions that the trial court violated his due process rights by admitting irrelevant and unduly prejudicial gang evidence and that the court erred in denying his pretrial motion to bifurcate the gang allegations. We corrected the abstract of judgment to state the correct custody credits and to reflect that restitution award against Zamora and Canales was joint and several. We also imposed a court security fee and court facility assessment on all four counts. (*People v. Zamora, supra*, B224529.)

### B. *Zamora's Petition for Resentencing*

On January 26, 2022 Zamora, representing himself, filed a form petition for resentencing pursuant to section 1172.6 and asked the court to appoint counsel for him. ~(CT 61)~ The People opposed the petition, arguing that Zamora was not eligible for relief as a matter of law because "the jury was not instructed on natural and probable consequences, felony murder or any other theory that allowed the jury to impute malice" and that, "as to all three counts, the jury found true the allegation that the crimes were committed willfully, deliberately and with premeditation."

5

~(CT 84)~ Zamora filed a reply,[3] arguing that he had stated a prima facie case and that the record did "not demonstrate beyond a reasonable doubt that no juror could have relied on a derivative theory of murder." ~(CT 167)~

On December 7, 2022 the superior court denied the petition. The court stated Zamora "was not convicted of felony murder. The jury instruction on natural and probable consequences was not given to the jury. The defendant was not convicted of any count on a theory that is no longer valid. The jury decided that the defendant had the specific intent to kill in that they found that the murder and attempted murder counts were committed with willfulness, deliberation, and premeditation. The court has considered the appellate opinion affirming the conviction of November 14th of 2011, the package of jury instructions submitted to the jury, and the verdict form for counts one through four. That's what the court has considered. The defendant is ineligible for relief as a matter of law. The petition is denied." ~(RT 602)~ Zamora filed a timely notice of appeal. ~(CT 194)~

## DISCUSSION

We appointed counsel to represent Zamora in this appeal. After reviewing the record, counsel did not identify any arguable issues. On August 23, 2023 counsel advised Zamora that he was filing a brief stating he was unable to find any arguable issues

---

[3] Zamora's court-appointed counsel explained that Zamora wanted to write the reply brief himself and that she typed it up for him. ~(RT 602)~

6

and that Zamora could submit any contentions he wanted the court to consider.

On September 8, 2023 we received a four-page handwritten supplemental letter brief from Zamora, arguing that he "had nothing to do with that murder" and that he last spoke to Ivan three weeks before the shooting. Zamora contended that Gutierrez lied about the incident and that Zamora's family would have been in danger had he told the truth about Gutierrez at trial. According to Zamora, he was walking with Gutierrez and Canales to a fast food restaurant when he heard shots. Zamora asserted: "I do remember Gutierrez, Canales walking in front of me. I didn't know that Canales shot at them on the apartments."

The record confirms that the trial court did not give any instructions on the natural and probable consequences doctrine, the felony-murder rule, or any other theory under which the jury could have imputed malice to Zamora. To the contrary, the trial court instructed the jury that, to convict Zamora of first degree murder, the People had to prove Zamora "acted willfully, deliberately, and with premeditation. The defendant acted willfully if he intended to kill. The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with premeditation if he deiced to kill before committing the act that caused death." ~(CT 133)~ The trial court further instructed the jury that, to find Zamora guilty of attempted murder, the People had to prove "that the attempted murder was done willfully, and with deliberation and premeditation." ~(CT 138)~ Because the jury convicted Zamora of willful, deliberate, and premeditated murder and attempted murder, under the trial court's instructions the jury had to have

found Zamora acted with the intent to kill. (See *People v. Mumin* (2023) 15 Cal.5th 176, 190 ["To elevate that offense to murder in the first degree on a malice theory, the defendant must act with a specific intent to kill that is formed willfully, deliberately, and with premeditation."]; see also *People v. Gaines* (2023) 93 Cal.App.5th 91, 131 ["[a]ttempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing"].)

Nothing in the record supports Zamora's assertion Gutierrez lied during his testimony at trial. In addition, the trial court instructed the jury with CALCRIM No. 301 that, "[e]xcept for the testimony of Efren Gutierrez, which requires supporting evidence, the testimony of only one witness can prove any fact." ~(CT 127)~ Multiple eyewitnesses identified Zamora as the shooter.

Neither Zamora nor his counsel has raised a cognizable legal issue, nor has our independent review identified any. The order denying Zamora's petition for resentencing is affirmed. (See *People v. Delgadillo* (2022) 14 Cal.5th 216, 231-232; see generally *People v. Kelly* (2006) 40 Cal.4th 106, 118-119; *People v. Wende* (1979) 25 Cal.3d 436, 441-442.)

## DISPOSITION

The order is affirmed.

SEGAL, Acting P. J.

We concur:

FEUER, J.

MARTINEZ, J.